```
            IN THE UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF ARKANSAS
                   FAYETTEVILLE DIVISION
```

WILLIAM J. DOMINIC                                          PLAINTIFF

          v.             Civil No. 05-5016

DeVILBISS AIR POWER COMPANY                                 DEFENDANT

## MEMORANDUM OPINION

Now on this 2nd day of March, 2006, comes on to be considered plaintiff's **Motion for Entry of Judgment (Doc. 35)** and plaintiff's **Motion for Attorney's Fees (Doc. 32)**. The Court, being well and sufficiently advised, finds and orders as follows with respect thereto:

1. Plaintiff instituted this action against his former employer asserting sexual harassment and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and the Arkansas Civil Rights Act ("ACRA"), 16-123-101, *et seq.* Plaintiff also asserted state-law claims for wrongful discharge, negligent hiring and negligent supervision.

2. The case proceeded to trial before a jury on November 29, 2005, and concluded as follows on December 2, 2005:

   * the Court granted defendant a **directed verdict** on plaintiff's **negligent-hiring claim**;

   * the jury found in favor of **defendant** on plaintiff's **wrongful discharge claim**; and

*   the jury returned a verdict in favor of **plaintiff** on his **sexual harassment, retaliation, and negligent supervision claims**.

3. The jury awarded plaintiff $100,000.00 in compensatory damages, $13,000.00 in lost wages and benefits, and $250,000.00 in punitive damages.

## MOTION FOR ENTRY OF JUDGMENT

4. In his **Motion for Entry of Judgment (Doc. 35),** plaintiff asserts that the applicable damages cap under Title VII and the ACRA is $300,000.00 because "[s]everal witnesses testified at trial that the Defendant regularly employed more than 500 employees at the relevant time periods." (Doc. 36 at pg. 2.) Plaintiff also argues that the Court should allocate the $50,000.00 excess damages to plaintiff's state law negligent supervision claim, which is not subject to any statutory cap, so as to maximize plaintiff's recovery and preserve the jury's verdict.

Defendant responds that "not only did plaintiff fail to establish the applicable employee levels of <u>this</u> defendant to support a $300,000.00 verdict pursuant to 42 U.S.C. § 1981(a) and/or A.C.A. § 16-123-107[(c)](2)(A), but negligent supervision is not a cause of action for which apportionment applies." (Doc. 37 at pg. 1.)

5. The combined total of compensatory damages (excluding lost wages and benefits) and punitive damages awarded by the jury in this case was $350,000.00.

Title VII and the ACRA place a cap on the amount of compensatory and punitive damages that may be awarded to a plaintiff. The statutes do not limit the recovery of back pay and lost benefits.

The amount of the cap on compensatory and punitive damages is dependent upon the number of employees the defendant has employed "in each of 20 or more calendar weeks in the current or preceding calendar year." Under Title VII and the ACRA, the combined total of compensatory damages and punitive damages awarded may not exceed:

- $50,000.00 for defendants having between 15 and 100 employees;
- $100,000.00 for defendants having between 101 and 200 employees;
- $200,000.00 for defendants having between 201 and 500 employees; and
- $300,000.00 for defendants having more than 500 employees.

42 U.S.C. § 1981a(b)(3) and Ark. Code Ann. § 16-123-107(c)(2)(A).

(a) The Court first addresses the issue regarding the number of employees employed by the named defendant in this case, DeVilbiss Air Power Company ("DeVilbiss").

(1) At trial, **Larry Hoover**, defendant's human resource manager during the time in question, testified:

> Q. Describe for me the different facilities that DeVilbiss had at the time that you were employed.
>
> A. DevilBiss Air Power had two facilities. They had a facility in Jackson, Tennessee and a facility in Decatur, Arkansas.
>
> Q. Okay. Just prior to that, was there also a facility in Mississippi?
>
> A. There ... was a Porter Cable facility in Mississippi, which was a sister company.
>
> Q. What is the relationship between DeVilbiss Air Power and Pentair?
>
> A. Pentair was the parent company of the Pentair Tools Group. Devilbiss Air Power was a company within the Pentair Tools Group.
>
> Q. Who was your immediate supervisor while you were working for DeVilbiss as the Human Resources Manager?
>
> A. I believe on my organizational chart, our Board of Director was Claude Kelly ....
>
> Q. And what was Mr. Kelly's title?
>
> A. Mr. Kelly was Vice President of Human Resources for the Porter Cable Tools Group.
>
> Q. Okay, and so there was a sufficient enough relationship between DeVilbiss Air Power and Pentair Tools Group for you to report directly to Mr. Kelly?
>
> A. Yes, sir.

Q. All right. How many employees did DeVilbiss Air Power regularly employ during the time that you were there?

A. At the Decatur facilities [where plaintiff worked]?

Q. Yes, sir.

A. Seasonally, ... [a]bout six months of the year, you'd have about three hundred and ten employees. The rest of the year, you'd have around two hundred.

Q. Okay, and how many employees did DeVilbiss Air Power regularly employ at the other facilities?

A. I'm really speculating. I'd say they had like four or five hundred permanent employees, and then seasonally, they may hire two or three hundred temporaries.

Q. Is it fair to say that DeVilbiss Air Power had at least four hundred employees on a regular basis, full-time employees?

A. Yes, sir.

(Tr. 101-03.)

  (2) **Claude Kelly** also testified during the trial as follows:

A. I am Director of Human Resources for the Industrial Products Group of Black and Decker.

Q. And I don't want to get into too much detail. How is that entity related to DeVilbiss?

A. DeVilbiss is one division of the Industrial Products Group that Black and Decker purchased October 4th of 2004.

Q. Mr. Kelly, would you kind of help me out with some of these changes that took place with the corporate

structure? You were the Human Resources Manager for Pentair Tools Group. Is that right?

A. I was, yes, up until the purchase of the company by Black and Decker.

Q. Okay. What was the effective date of the purchase by Black and Decker?

A. It was either October 2nd, 2004 or October 4th, 2004. I'm not sure which.

Q. Okay, and what was it that Black and Decker purchased?

A. They purchased the entire Pentair Tools Group, which was a portion of the Pentair company.

Q. Okay, and so before October 2nd, '04, you were employed by Pentair Tools Group. Is that right?

A. That is correct, as -- as Vice President of Human Resources.

Q. Okay.

A. The title was different.

Q. Now, tell me -- and this is prior to October 2nd of '04 -- what divisions, what facilities, what operations Pentair Tools Group had.

A. The Tools Group had the DeVilbiss division, which was the DeVilbiss facility in Jackson, Tennessee and the DeVilbiss facility in Decatur, Arkansas. There was also a Porter Cable Delta operation in Jackson, Tennessee. There was one that was closed in Tupelo, Mississippi. It was closed in early 2004, I believe. There was a very small operation in Mesa, Arizona, and the name of that operation was Beesmeyer. Twenty-five people. There was a small warehousing facility in Canada, and a small facility in Germany. They were all under the Porter Cable name.

Q. Porter Cable Delta in Jackson, Mississippi?

A. Jackson, Tennessee.

> Q. Jackson, Tennessee. How many employees did that company have at that location?
>
> A. I'm going to say approximately twelve hundred. Twelve to fourteen hundred.
>
> Q. Twelve to fourteen hundred employees, and you were the Human Resources Director also in charge of that facility?
>
> A. That is correct.

(Tr. 616, 648-49.)

(b) The above testimony regarding defendant DeVilbiss's corporate structure and the number of its employees is somewhat confusing, but the Court discerns from it that DeVilbiss had two facilities with a combined total of more 500 employees:

* the Decatur, Arkansas facility had up to 310 employees (200 permanent employees and 110 temporary employees); and

* the Jackson, Tennessee facility had up to 800 employees (400 to 500 permanent employees and 200 to 300 temporaries).

Any employee who works for a defendant for "20 or more calendar weeks" is considered the defendant's employee under Title VII and the ACRA. The testimony in this case indicates that defendant DeVilbiss hired temporary employees to work for approximately six months of the year. Accordingly, the Court has included the temporaries in its calculation of defendant's total employees.

(c) While it is unnecessary to do so in order to decide the issue, the 1200 to 1400 employees of the Porter Cable Delta

-7-

facility in Jackson, Tennessee may also be considered in calculating defendant DeVilbiss's total employees, as the testimony indicates that the Porter Cable facility and the DeVilbiss facilities were all part of the Pentair Tools Group and were under common management and control. See <u>Artis v. Francis Howell North Band Booster Ass'n, Inc.</u>, 161 F.3d 1178, 1184 (8th Cir. 1998) (under Title VII, separate entities can be treated as consolidated based on a consideration of the following factors: interrelations of operations, common management, centralized control of labor relations, and common ownership or financial control).

6. Defendant asserts that plaintiff failed "to establish the applicable employee levels of <u>this</u> defendant." This conclusory assertion is not explained by defendant nor does it point to any proof in the record to support it -- despite the fact that it is the defendant (and not the plaintiff) who has the burden of establishing the number of defendant's employees. See <u>Hamlin v. Charter Township of Flint</u>, 965 F. Supp. 984, 988 (E.D. Mich. 1997). Based on the testimony detailed above and the Court's analysis of it, the Court concludes that defendant had more than 500 employees during the relevant time period and that the applicable statutory damages cap is $300,000.00.

7. The Court next addresses plaintiff's argument that the Court should allocate the $50,000.00 in excess compensatory and

punitive damages to plaintiff's state law negligent supervision claim.

A district court has discretion to allocate a damage award between state and federal claims in cases such as this where the standards of liability are the same[1] and the jury has not been asked to distinguish between claims in assessing damages. See Madison v. IBP, Inc., 257 F.3d 780, 801 (8th Cir. 2001), vacated on other grounds, 536 U.S. 919 (2002).

In light of the foregoing authorities, the Court finds it appropriate to allocate the damage award so as to preserve the entire $350,000.00 award of compensatory and punitive damages, as well as the $13,000.00 award of lost wages and benefits. Accordingly, a separate judgment will be entered awarding plaintiff:

- \*   on his negligent supervision claim - $50,000.00 in compensatory damages;
- \*   on his sexual harassment and retaliation claims - $50,000.00 in compensatory damages and $250,000.00 in punitive damages; and
- \*   on his retaliation claim only[2], $13,000.00 in lost wages and benefits.

---

[1] The jury was instructed that plaintiff could only succeed on his negligent supervision claim if he first established that he was subjected to sexual harassment and/or retaliation.

[2] Plaintiff was not entitled to recover lost wages and benefits on his other claims.

## MOTION FOR ATTORNEY'S FEES

8. In his Motion for Attorney's Fees, plaintiff requests an award of $51,232.73, representing:

* $5,432.73 in costs; and
* $36,600.00 in fees for 228.75 hours of non-trial work performed by counsel at an hourly rate of $160.00; and
* $9,200.00 in fees for 46 hours of trial work at an hourly rate of $200.00.

Defendant does not contest the rates charged by plaintiff's counsel, but does object that certain hours claimed are not compensable.

9. Under both Title VII and the Arkansas Civil Rights Act, prevailing plaintiffs are entitled to reasonable attorneys' fees and costs. *See* 42 U.S.C. § 2000e-5(k); Ark. Code Ann. §§ 16-123-107(c)(1)(A) & 16-123-108(c). With these principles in mind, the Court now turns to an examination of the parties' contentions.

(a) Defendant objects that plaintiff is not entitled to recover attorney's fees on his negligent hiring and wrongful discharge claims, as he did not prevail on these claims. Defendant asserts that it is "impossible to tell" from plaintiff's counsel's affidavit and billing records the time and costs attributable to the unsuccessful claims.

When a plaintiff has prevailed on some, but not all, of his claims, the court should consider the potential impact of partial success on the fee award:

> If any issues on which the plaintiff lost are unrelated to those on which he won, the unrelated issues must be treated as if they were separate cases and no fees can be awarded.... If, however, the claims on which the plaintiff lost are related to those on which he won, the court may award a reasonable fee.... The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole.... If the plaintiff has won excellent results, he is entitled to a fully compensatory fee award, which will normally include time spent on related matters on which he did not win.... If the plaintiff's success is limited, he is entitled only to an amount of fees that is reasonable in relation to the results obtained.

Jenkins v. State of Mo., 127 F.3d 709, 716 (8th Cir. 1997) (citations omitted).

Here, while plaintiff was not successful on his negligent hiring and wrongful discharge claims, these claims were based on the same facts and related to plaintiff's Title VII sexual harassment and retaliation claims. Plaintiff's Title VII claims were the heart of his case and plaintiff obtained a substantial verdict in the amount of $363,000.00.

Given plaintiff's significant success on his core claims, the Court concludes that plaintiff is entitled to fees for time spent on his related, yet unsuccessful, negligent hiring and wrongful discharge claims. See Wal-Mart Stores, Inc. v. Barton, 223 F.3d 770, 772-73 (8th Cir. 2000) (district court did not abuse its discretion in refusing to reduce attorney's fees based on fact that

-11-

plaintiff did not prevail on her negligent retention and other state law claims, as plaintiff obtained a substantial verdict ($25,000.00) on her Title VII sexual harassment claim). Accordingly, this objection will be overruled.

(b) Defendant also argues that even though plaintiff was successful on his negligent supervision claim, this is a state law claim for which he is not entitled to attorney's fees.

The Supreme Court has noted that, in some cases,

> the plaintiff's claims for relief will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

Hensley v. Eckerhart, 461 U.S. 435, 436 (1983).

Plaintiff's negligent supervision claim shared a common core of facts with his Title VII claims, all of which arose from the alleged instances of sexual harassment and retaliation. Accordingly, the Court rejects this argument and will not reduce the attorney's fee award for time spent on the negligent supervision claim. See Barton, 223 F.3d at 773-74 (district court did not abuse its discretion in awarding fees for time related to state-law claims for which fees were not recoverable, as state law claims shared a common core of facts with Title VII claims and all claims arose from alleged sexual harassment).

(c) Defendant next objects concerning two time entries that predate the drafting of the complaint. These entries total 2.3 hours plaintiff's counsel spent reviewing correspondence and information from plaintiff, preparing a letter to defendant regarding the possible transfer of plaintiff prior to plaintiff terminating his employment, and making a telephone call to Joel Abrahamson, an attorney defendant hired to investigate plaintiff's allegations.

This objection is without merit and will be overruled. In the Court's view, these hours are compensable, as they relate to counsel's review of the facts of plaintiff's case and his attempt to avoid having to file suit by seeking to have plaintiff transferred. Cf. Brinn v. Tidewater Trans. Dist. Comm'n, 105 F. Supp. 2d 500, 505 (E.D. Va. 2000) (prevailing party may recover attorney's fees incurred in attempting to negotiate a settlement prior to filing suit).

(d) Defendant also objects to two hours claimed by plaintiff's counsel for "[r]eceipt and review of EEOC materials." (Doc. 32 at pg. 6.) Defendant asserts that plaintiff "has no explanation indicating what those materials were or how they related to this action." (Doc. 33 at pg. 2.)

Plaintiff responds that the EEOC materials reviewed by counsel prior to suit were plaintiff's EEOC charge, questionnaire, and information submitted by plaintiff to the EEOC, all of which were

-13-

obtained and reviewed by defense counsel as well. Further, plaintiff points out that defendant introduced a portion of the EEOC file into evidence.

The Court sees no merit to defendant's objection, as the time counsel spent reviewing the EEOC materials was reasonable and is compensable.

10. With regard to the costs claimed by plaintiff's counsel, defendant objects that counsel's billing statement does not set forth an "adequate disclosure regarding how [certain] costs qualify for reimbursement." (Doc. 33 at pg. 2.)

(a) Defendant objects to $27.24 in costs claimed for obtaining copies of medical records from plaintiff's physicians. Defendant asserts that "the only medical records introduced as evidence in this matter were records provided to defendant directly from the medical care providers ..., which defendant, not plaintiff, paid for." (Id.) Plaintiff responds that counsel also obtained the records directly from plaintiff's physicians and incurred costs for these records.

A prevailing party is entitled to recover costs incurred for "copies of papers necessarily obtained for use in the case." 28 U.S.C. § 1920(4). It is irrelevant that defendant's copies of the medical records, and not plaintiff's, were the ones introduced at trial. See U.S. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 173 (2d Cir. 1996) (photocopying costs may be recovered even though

underlying document was not admitted at trial).  The Court therefore sees no merit to defendant's objection.

(b) Defendant next objects to $200.00 claimed on July 13, 2004, before the lawsuit was filed, for "Copying of Audiotapes," and another $284.67 claimed on August 12, 2005, for "Copy of audio tapes." (Doc. 32 at pg. 11.)  Defendant asserts that these costs appear duplicative and the audiotapes were never provided to defendant.

Plaintiff does not respond to this objection, but the Court's review of the trial transcript reveals that defense counsel acknowledged being provided two packets of audiotapes plaintiff made of conversations he had with defendant's employees. (Tr. 294.)  Further, on cross-examination of plaintiff, defense counsel questioned plaintiff extensively about these tapes.  Accordingly, the Court finds that the costs associated with copying the audiotapes are compensable.

(c) Defendant also objects to $109.35 in Federal Express charges claimed by plaintiff's counsel.  Defendant asserts that plaintiff has offered no explanation as to "why or how the costs are related and/or necessary to this action."  Plaintiff does not respond to this objection.

It is not the Court's role to second-guess every cost decision counsel might make.  The Federal Express charges are not substantial, which tends to show that plaintiff's counsel was not

engaged in wasteful spending. The Federal Express charges will therefore be allowed. See Lambert v. Fulton County, Ga., 151 F. Supp.2d 1364, 1378-79 (N.D. Ga. 2000) (holding that Federal Express costs were compensable).

(d) Finally, defendant objects to $268.22 claimed by plaintiff's counsel for conducting West Law research. The Eighth Circuit has held that "computer-aided research, like any other form of legal research, is a component of attorney's fees and cannot be independently taxed as an item of cost in addition to the attorney's fee award...." Leftwich v. Harris-Stowe State College, 702 F.2d 686, 695 (8th Cir. 1983). Accordingly, this objection will be sustained and the West Law charges will not be allowed as costs.

## CONCLUSION

11. Based on the foregoing, plaintiff's **Motion for Entry of Judgment (Doc. 35)** is **GRANTED** and a separate judgment will be entered awarding plaintiff $363,000.00 in damages, allocated as follows:

* $50,000.00 in compensatory damages on his negligent supervision claim;
* $50,000.00 in compensatory damages and $250,000.00 in punitive damages on his sexual harassment and retaliation claims; and
* $13,000.00 in lost wages and benefits on his retaliation claim.

12. Plaintiff's **Motion for Attorney's Fees (Doc. 32)** is also **GRANTED** and plaintiff's counsel will be awarded $50,964.51 in fees and costs, allocated as follows:

* $5,164.51 in costs, which reflects a deduction of $268.22 for West Law research from the total $5,432.73 in costs claimed;
* $36,600.00 in fees for 228.75 hours of non-trial work at an hourly rate of $160.00; and
* $9,200.00 in fees for 46 hours of trial work at an hourly rate of $200.00.

**IT IS SO ORDERED** on the date first above-written.

**/s/JIMM LARRY HENDREN**
**JIMM LARRY HENDREN**
**UNITED STATES DISTRICT JUDGE**