IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WILLIAM J. DOMINIC                                              PLAINTIFF

        v.                Civil No. 05-5016

DEVILBISS AIR POWER COMPANY                                     DEFENDANT

## O R D E R

Now on this 4th day of August, 2006, comes on to be considered **Defendant's Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial or Remittitur (Doc. 42)**. The Court, being well and sufficiently advised, finds that the motion should be **DENIED** in all respects. The Court finds and orders as follows with respect thereto:

1. Plaintiff instituted this action against his former employer asserting sexual harassment and retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and the Arkansas Civil Rights Act ("ACRA"), 16-123-101, *et seq.* Plaintiff also asserted state-law claims for wrongful discharge, negligent hiring and negligent supervision.

2. The case proceeded to trial before a jury on November 29, 2005, and concluded as follows on December 2, 2005:

        *    the Court granted defendant a directed verdict on plaintiff's negligent-hiring claim;

        *    the jury found in favor of defendant on plaintiff's wrongful discharge claim; and

*       the jury returned a verdict in favor of plaintiff on
            his sexual harassment, retaliation, and negligent
            supervision claims.

    3.      The jury awarded plaintiff $100,000.00 in
compensatory damages, $13,000.00 in lost wages and benefits, and
$250,000.00 in punitive damages.

    4.      On January 16, 2006, plaintiff filed a **Motion for
Entry of Judgment (Doc. 35),** asserting the trial testimony
established that defendant employed more than 500 employees and,
therefore, the applicable damages cap under Title VII and the ACRA
was $300,000.00. Plaintiff further urged the Court to allocate
the $50,000.00 excess damages to plaintiff's state law negligent
supervision claim.

    The Court agreed with plaintiff's positions and, on March
2, 2006, granted plaintiff's motion and entered a $363,000.00
judgment in favor of plaintiff. The judgment was allocated as
follows:

    -       $50,000.00 in compensatory damages on plaintiff's
            negligent supervision claim;

    -       $50,000.00 in compensatory damages and $250,000.00
            in punitive damages on his sexual harassment and
            retaliation claims; and

- $13,000.00 in lost wages and benefits on his retaliation claim.[1]

5. Defendant now moves for judgment as a matter of law (JAML), or in the alternative, for a new trial or remittitur. The Court will address each of the grounds for the motion in turn.

6. **Sufficiency of the Evidence on Plaintiff's Sexual Harassment Claim** -- Defendant argues, in a somewhat conclusory fashion, that it is entitled to a JAML or a new trial on plaintiff's sexual harassment claim, as the evidence was insufficient to allow the jury to infer that plaintiff's supervisor, Patricia Fant, sexually harassed him.

A motion for JAML should only be granted if the nonmoving party "has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). A party seeking to overturn a jury verdict based on the insufficiency of the evidence faces an onerous burden. *See Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 615 (8th Cir. 2000). A JAML is proper "'[o]nly when there is a complete absence of probative facts to support the conclusion reached' so that no reasonable juror could have found for the nonmoving party.'" *Hathaway v. Runyon*, 132 F.3d 1214, 1220 (8th Cir. 1997) (*quoting Lavender v. Kurn*, 327 U.S. 645, 653

---

[1]The Court also granted Plaintiff's **Motion for Attorney's Fees (Doc. 32)** and awarded plaintiff $50,964.51 in attorney's fees and costs.

-3-

(1946)). In evaluating a motion for JAML, the court must "assume as proven all facts that the nonmoving party's evidence tended to show, give [him] the benefit of all reasonable inferences, and assume that all conflicts in the evidence were resolved in [his] favor." *Id.*

A motion for a new trial under Rule 59 of the Federal Rules of Civil Procedure should only be granted if the jury's verdict was against the great weight of the evidence so as to constitute a miscarriage of justice. *See Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1010 (8th Cir. 2000).

In assessing a hostile work environment claim, all circumstances must be considered, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). In addition, the "sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* at 787.

With the foregoing principles in mind, the Court will now review the evidence pertinent to defendant's contentions.

(a) Plaintiff presented evidence at trial that he was subjected to the following:

-4-

* that Fant attempted to unzip plaintiff's pants and grab his genital area on one occasion;

* that Fant asked plaintiff if he wanted to get a hotel room so she could "tie [him] up and attack [him]" (Tr. 162);

* that Fant made frequent comments about "needing a man" and needing "a piece of ass"; (Tr. 424-26, 691);

* that Fant suggested that she, plaintiff, and co-workers take her parents' van on a "team-building" trip in which they could watch pornographic movies and engage in group sex (Tr. 123-24, 162, 399);

* that Fant stated she was planning a business trip for just the two of them so plaintiff "could do [his] drinking without [his] wife being around" (Tr. 165);

* that Fant frequently called plaintiff's work phone to discuss trivial matters and also called plaintiff's personal phone after hours and on weekends several times a day;

* that Fant brought plaintiff coffee on a daily basis - something she did not do for any other employee - and also asked him to lunch on a daily basis;

* that Fant made comments such as, "If things don't work out at home, you can move in with me"(Tr. 159);

* that Fant acted jealous if plaintiff had conversations with female co-workers or sat by them in meetings, and would try to

interject herself into the conversation or wedge her chair between plaintiff's and the female co-worker's; and

     \* that when plaintiff mentioned pursuing other employment, Fant stated that "she was going to drive off a bridge and kill herself." (Tr. 160.)

     (b) Plaintiff testified that Fant's conduct made him feel "scared for [his] life, [like] a fatal attraction type thing." (*Id.*) There was also evidence that plaintiff suffered from severe depression and anxiety due to the situation and that he sought counseling and was prescribed anti-depressants. (Pl.'s Ex. 89.)

     (c) From the evidence mentioned, the Court believes a jury could reasonably infer and conclude that plaintiff was subjected to a sexually hostile work environment.

     Accordingly, the Court rejects defendant's challenge to the sufficiency of the evidence.

     7. **Defendant's Affirmative Defense to Plaintiff's Sexual Harassment Claim** -- Defendant alternatively argues that, even if plaintiff was sexually harassed by Fant, it is entitled to JAML or a new trial because the evidence established that it exercised reasonable care to prevent and correct the harassment and plaintiff did not take full advantage of opportunities provided by defendant to avoid the harassment.

     Before addressing this contention, the Court notes that it instructed the jury (Instruction No. 12) that defendant had an

affirmative defense to plaintiff's sexual harassment claim if defendant could prove (1) that it exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the defendant or to avoid harm otherwise. *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 137-38 (2004)*; Faragher*, 524 U.S. at 807; *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

(a)  The Court first considers whether a jury could have reasonably found, on the proof presented, that defendant exercised reasonable care to prevent and correct the harassment.

In assessing the reasonableness of an employer's remedial measures, several factors are considered: the temporal proximity between the notice and remedial action, the disciplinary or preventive measures taken, and whether the measures ended the harassment. *See Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990, 994 (8th Cir. 2003).

*  The evidence indicated that defendant did conduct an investigation into plaintiff's complaints of sexual harassment. However, plaintiff testified that when he met with Larry Hoover, defendant's human resources manager, and Chuck Chism, the plant manager, to discuss the harassment, "The very first question Mr. Hoover asked [plaintiff] was, 'What do you feel about destroying her life like you're doing.'" (Tr. 173.)  Plaintiff also testified

that Hoover and Chism then began asking him questions about his personal life -- including his marriage.

* There was also evidence that Hoover was considered to be "pro-Patricia Fant." (Tr. 610.) Further, one of plaintiff's co-workers testified that when Hoover and Chism interviewed her, they asked questions about Fant's supervisory skills but she did not "recall a discussion of sexual harassment." (Tr. 603-04.)

* Plaintiff also testified that, at a sexual harassment training seminar conducted some three months after his complaints, Chism openly discussed his "dislike of sexual harassment laws" and referenced hypothetical instances of sexual harassment resembling those experienced by plaintiff. (Tr. 238-39.)

* With regard to the results of the investigation, Chism testified that the information he gathered confirmed "that some things did occur, and it was obviously bad judgment on her part," but he "couldn't prove that the most hideous things occurred." (Tr. 126.) Chism further testified that he did not feel that he was "getting the whole story from either side," but that he did not believe plaintiff was lying. (*Id.*)

* With regard to any disciplinary or preventive measures taken by defendant following the investigation, plaintiff testified that he was advised by Hoover and Claude Kelly, Director of Human Resources, that they were dismissing his complaint because "the

touching incident could not be proven because there [were] no witnesses." (Tr. 174.)

* The evidence indicated that Fant remained plaintiff's supervisor and that no disciplinary action was taken against her; rather, she was merely advised in a letter that, while it "may be difficult," she was not to retaliate against plaintiff for filing the sexual harassment complaint. (Pl.'s Ex. 18.)

* The evidence further indicated that, despite this warning, Fant immediately began retaliating against plaintiff.

* The evidence indicated that, after plaintiff complained that defendant's investigation and response to his allegations of sexual harassment "was a phony dog and pony show" and complained that Fant was retaliating against him (Pl.'s Ex. 15), defendant hired an employment law firm to conduct a second investigation into plaintiff's allegations.

Based on the above evidence, the Court believes a jury could reasonably have found that defendant's initial investigation into plaintiff's complaints was inadequate, biased, and/or not conducted in good faith. *Cf. Hathaway*, 132 F.3d at 1223-24 (reversing grant of JAML on sexual harassment claim; jury could have concluded that management's response to plaintiff's complaints was insufficiently thorough and not conducted in good faith, where, among other things, plaintiff did not believe supervisor to whom

she reported complaints was impartial and supervisor failed to interview plaintiff's only witness to the physical touchings).

An "employer must take 'prompt remedial action reasonably calculated to end the harassment.'" *Id.* at 1224 (citation omitted). "It is not a remedy for the employer to do nothing simply because the coworker denies that the harassment occurred, ... and an employer may take remedial action even where a complaint is uncorroborated." *Id.*

Based on the above evidence, the jury could have found that even if there were no witnesses to the "most hideous" acts committed by Fant, many of plaintiff's allegations of harassment were confirmed and defendant did not believe plaintiff was lying about the situation. The jury could have therefore concluded that defendant acted unreasonably in allowing Fant to remain as plaintiff's supervisor and in failing to take any disciplinary action against her.

Even though there was evidence of an attempt by defendant to follow up on its initial investigation, the jury could have concluded that defendant's efforts to further investigate the situation were too little too late or, perhaps, were simply an effort by defendant to shield it from liability for failing to adequately investigate and respond to plaintiff's allegations in the first place.

(b)  The Court next addresses defendant's contention that plaintiff unreasonably failed to take advantage of preventive or corrective opportunities provided by the defendant -- or that he failed to avoid harm otherwise.

Defendant says the evidence established that plaintiff delayed in reporting the harassment and reported it to co-workers first rather than directly to management.

Defendant also says the evidence established that plaintiff spoke with co-workers about his marital problems, thereby "inviting conversation about the most personal and intimate of matters, hardly the actions of one who seeks to avoid communications of that nature."  (Doc. 42 at pg. 15.)

(1) In response to the first contention, plaintiff points out that he testified:

*  that he did not initially report the incident when Fant attempted to unzip his pants and grab his genital area because, "I wasn't really wanting to cause any problems or have any ... job issues.  Plus, you know, someone can make a mistake, and I was willing to let that slide and go on with life and try to make things work as best I could."  (Tr. 155-56.)

*  that he also delayed in reporting the harassment because Fant had made comments which caused him to fear that he would be "blacklist[ed]" or would lose his job.  (Tr. 165.)

\* that he decided to report the harassment because it got to the point where he felt like Fant was "stalking" him; and

\* that he discussed the situation with his co-workers first because they had actually "c[o]me to [him] about Ms. Fant's erratic behavior in front of the entire office and were pretty frightened." (Tr. 166.)

(2) In response to the second contention, plaintiff explained that he spoke with co-workers about his marital problems because, "in the middle of all of this harassment eight hours a day, ... I was very depressed, and my marriage was having some difficulty because of the harassment itself and its interference in my marriage."

This was an issue for the jury and, based on the above evidence, the Court believes a jury could reasonably have rejected any assertion that plaintiff failed to take advantage of preventive or corrective opportunities provided by the defendant or that he unreasonably failed to avoid harm otherwise.

In light of the foregoing, the Court concludes that defendant is not entitled to JAML or a new trial on its affirmative defense to plaintiff's sexual harassment claim.

8. **Sufficiency of the Evidence on Plaintiff's Retaliation/Constructive Discharge Claim** -- Defendant makes several arguments challenging the sufficiency of the evidence on

the Retaliation/Constructive Discharge Claim and the Court will address them in turn.

(a) Defendant argues that it is entitled to JAML or a new trial on plaintiff's retaliation claim because the evidence did not establish that plaintiff suffered an adverse employment action.

The Court sees no merit to this argument, as the jury found that plaintiff was constructively discharged and a constructive discharge constitutes an adverse employment action. *See Baucom v. Holiday Cos.*, 428 F.3d 764, 767 (8th Cir. 2005) (quoting *Kerns v. Capital Graphics, Inc.*, 178 F.3d 1011, 1016-17 (8th Cir. 1999)).

(b) Defendant next argues that the evidence did not support the jury's finding that plaintiff was constructively discharged.

A constructive discharge occurs when an employer deliberately renders the employee's working conditions intolerable, thereby forcing him to quit. *See Tatum v. Arkansas Dept. of Health*, 411 F.3d 955, 960 (8th Cir. 2005). To prove a case of constructive discharge, a plaintiff must show that (1) a reasonable person in his situation would find the working conditions intolerable, and (2) the employer intended to force the employee to quit. *Id.*

In this connection, plaintiff testified that almost immediately after he complained of the sexual harassment, Fant began retaliating against him in various ways, including:

* ordering him to perform "busy work" or unnecessary tasks (Tr. 182);

* intentionally giving him false instructions in the performance of tasks (Tr. 176);

* ordering him to perform new responsibilities for which he had not received training;

* assigning him work with deadlines which were essentially impossible to meet;

* making unwarranted criticism of his performance in the presence of co-workers; and

* repeatedly coming to his office to do nothing but stare at him (Tr. 185).

Plaintiff detailed these acts of retaliation in letters to management. (Pl.'s Exs. 15, 105.) According to plaintiff, when he met with Hoover and Chism to discuss the retaliation, "[I]t was a major dressing down. Those two ganged up on me. Treated me harshly, threatened me with discipline." Plaintiff testified that Hoover's conclusion was that Fant "did nothing wrong, and get back to work." (Tr. 184.) Plaintiff subsequently requested a transfer to another facility, but was advised that there were no positions open in any other facility, that were not likely to be any openings

in the near future, and that Fant would continue to act as his supervisor. (Pl.'s Exs. 67, 73.) Plaintiff thereafter tendered his resignation. (Pl.'s Ex. 75.)

If an employee quits because he reasonably believes there is no chance for fair treatment, there has been a constructive discharge, but the employee must give his employer a reasonable opportunity to work out the problem before quitting. *See Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568, 574 (8th Cir. 1997).

From the above evidence, the Court believes a jury could reasonably have concluded that Fant subjected plaintiff to repeated acts of retaliation that rendered his working conditions intolerable -- with the intent of forcing him to quit -- and that there was no chance for fair treatment, as defendant refused to transfer plaintiff to another facility or to remove Fant as his supervisor.

Accordingly, the Court concludes that defendant is not entitled to a JAML or a new trial on plaintiff's retaliation/constructive discharge claim.

9. **Sufficiency of the Evidence on Plaintiff's Negligent Supervision Claim** -- Defendant argues that it is entitled to JAML or a new trial on plaintiff's negligent supervision claim, as it "reasonably relied on the results of the investigations it commissioned." (Doc. 41 at pg. 41.)

Given the Court's above analysis regarding the inadequacy of the first investigation and the timing and suspect nature of the second investigation, the Court sees no merit to this argument and rejects it.

10. **Exclusion of Investigative Reports** -- Defendant argues that it is entitled to a new trial because the Court erroneously excluded the written reports of the investigations it conducted. (Def.'s Proffered Exs. 30, 34.) Defendant says that the investigative reports could have helped establish that plaintiff's complaints of sexual harassment and retaliation could not be substantiated and that defendant acted in reasonable reliance on the results of the investigations.

At trial, the Court sustained plaintiff's objections to the investigative reports and excluded them on the grounds that they were hearsay and that they were not prepared in the regular course of business, so as to render them admissible under Rule 803(6) of the Federal Rules of Evidence. (Tr. 708-09.)

Defendant now argues that the reports were not offered "to establish whether the alleged acts o[f] harassment or retaliation took place[;] [r]ather, they were offered to show why [defendant] made the decisions it made...." (Doc. 42 at pg. 32.) Defendant, however, did not make this argument at trial and, thus, neither the plaintiff nor the Court had an opportunity to then consider it. Had the argument then been properly and timely made, the Court

strongly doubts it would have permitted the reports to be received into evidence because it would appear that their probative value would have been substantially outweighed by the danger of unfair prejudice to the plaintiff and/or the danger of misleading the jury. *See* Fed. R. Evid. 403. Moreover, defendant was free to call -- and did call -- as witnesses the individuals who prepared the reports, Joel Abrahamson and Steven Chlupsa. Both testified at trial regarding the results of their investigations and they were allowed to view the reports to refresh their recollection. Therefore, exclusion of the reports was not unfairly prejudicial to defendant in any way. Accordingly, defendant is not entitled to a new trial based on the exclusion of the investigative reports.

11. **Punitive Damages** -- Defendant argues that it is entitled to JAML on plaintiff's claim for punitive damages, as the evidence did not support the $250,000.00 award.

(a) Punitive damages may be imposed if the employer acted with malice or reckless indifference to the employee's rights. *See Rowe v. Hussmann Corp.*, 381 F.3d 775, 783 (8th Cir. 2004). This standard does not require egregious misconduct, but there must be evidence that the employer intentionally discriminated and had "knowledge that it may be acting in violation of federal law." *Id.* at 783-84 (quoting *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 535 (1999)).

The Court detailed above the evidence regarding the numerous acts of sexual harassment and retaliation, plaintiff's repeated complaints, and the inadequacy or bias of defendant's investigation and response. The Court also previously noted the evidence indicating that Plant Manager Chism openly discussed his "dislike of sexual harassment laws" and referenced hypothetical instances of sexual harassment resembling those experienced by plaintiff. (Tr. 238-39.) From this evidence, the Court believes a jury could reasonably have concluded that defendant acted with malice or reckless indifference to plaintiff's rights. *Cf. Williams v. Conagra Poultry Co.*, 378 F.3d 790, 796 (8th Cir. 2004) (evidence was sufficient to support award of punitive damages where employee testified that he repeatedly complained to upper management about racial harassment and management failed to take any meaningful action to address the harassment).

(b) Defendant next argues that there was no basis for the jury to determine an appropriate amount of punitive damages, as plaintiff presented no evidence of defendant's financial capacity. The Court sees no merit to this argument.

Plaintiff points out that there was evidence that the defendant operated at least three separate manufacturing facilities and had hundreds of employees. There was also evidence of inter-company wire transactions of over $17,000,000.00. (Def's Ex. 48, No. 2002886). In any event, as plaintiff correctly points out, it

was defendant's burden, and not plaintiff's, to introduce evidence of its net worth for purposes of minimizing a punitive damages award.  *See Grabinski v. Blue Springs Ford Sales, Inc.*, 136 F.3d 565, 570-71 (8th Cir. 1998).

(c)  Defendant also argues that the punitive damages award was excessive.

Whether an award of punitive damages is reasonable depends on such factors as the degree of reprehensibility of the defendant's conduct and the proportional relationship between the plaintiff's actual harm and the award.  *See MacGregor v. Mallinckrodt, Inc.*, 373 F.3d 923, 932 (8th Cir. 2004).

With regard to the first factor, again, the evidence detailed above regarding the numerous acts of sexual harassment and retaliation, plaintiff's repeated complaints, and the inadequacy or bias of defendant's investigation and response indicates that defendant's conduct was sufficiently reprehensible to justify the punitive damages award.  Further, given defendant's failure to remedy the situation, the jury could have concluded that a large punitive damages award was necessary to deter such conduct in the future.  *See id.* at 933.

With regard to the proportional relationship between plaintiff's actual harm and the punitive damages award, the jury awarded plaintiff $113,000.00 in compensatory damages and lost wages and benefits, and $250,000.00 in punitive damages.  Thus, the

ratio of punitive damages to actual damages was a little over 2:1. Greater ratios than that have been consistently upheld. *Id.* (citing cases upholding ratios of 10:1).

(d)    Based on the above, the Court concludes that defendant is not entitled to JAML on plaintiff's punitive damages claim or to remittitur of the award.

12.    **Statutory Cap and Allocation of Damages** –– Defendant argues that the Court erred in calculating the number of its employees and that the statutory cap on damages should be $200,000.00, rather than $300.000.00.

(a)    Defendant submits an affidavit from its Director of Human Resources stating that defendant did not employ 500 employees at its Decatur, Arkansas facility during the time period in question.

Plaintiff's Motion for Entry of Judgment (Doc. 35) addressed the statutory cap issue.  In response to that motion, defendant merely made the conclusory assertion that plaintiff had failed "to establish the applicable employee levels of <u>this</u> defendant."  (Doc. 37 at pg. 1.)  Defendant did not explain this assertion nor did it point to any proof in the record to support it.

In ruling on plaintiff's motion, the Court thoroughly addressed the trial testimony and concluded it established that defendant had more than 500 employees, and that the number of

employees at its Jackson, Tennessee facilities (not just the Decatur facility where plaintiff worked) should be considered because the facilities were all under the same management and control. (Doc. 40 at pgs. 4-8.)

The affidavit defendant now submits does not alter the Court's assessment of the trial testimony nor its conclusion that the employees at defendant's Jackson facilities should be considered in calculating defendant's total employees.

(b) Finally, defendant argues that the Court erred in allocating the $50,000.00 excess damages to plaintiff's state law negligent supervision claim.

The Court addressed this issue in ruling on plaintiff's Motion for Entry of Judgment and, for the reasons stated in its prior ruling (Doc. 40 at pgs. 8-9), finds that the allocation was appropriate.

13. **Conclusion** -- Based on the foregoing, the Court concludes and orders as follows:

* **Defendant's Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial or Remittitur (Doc. 42)** should be, and hereby is, **DENIED** in all respects.

* Defendant's **Motion to Strike Portions of Plaintiff's Supplemental Response (Doc. 50)** to the subject motion should be, and is, **DENIED**.

IT IS SO ORDERED.


                                      __/s/JIMM LARRY HENDREN__
                                       JIMM LARRY HENDREN
                                       UNITED STATES DISTRICT JUDGE